UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BAT LLC,

                 Plaintiff,

        -against-

TD BANK, N.A. *et al.*,

                 Defendants.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**
15 CV 5839 (RRM) (CLP)

**POLLAK**, United States Magistrate Judge:

      On August 3, 2015, plaintiff BAT LLC ("BAT") commenced this action in the Supreme Court of New York, Kings County, against defendants TD Bank, N.A. ("TD Bank") and ADT LLC ("ADT"),[1] alleging a breach of contract claim and a violation of New York Banking Law § 338 against TD Bank, and gross negligence claims against both TD Bank and ADT in connection with a safety deposit box located at 1602 Avenue U, Brooklyn, New York (the "Avenue U branch"). On October 9, 2015, the action was removed to this Court.

      On September 15, 2016, BAT filed the Fourth Amended Complaint naming Lydia Security Monitoring, Inc., d/b/a COPS ("COPS"), Halifax Security, Inc. ("Halifax"), and Integrated Security Systems ("Integrated"), alleging negligence and breach of contract on a third party beneficiary theory.

      Currently pending before this Court are a series of discovery disputes. The Court deals with each in turn.

---

[1] ADT was dismissed from the action on December 15, 2015. (See Notice of Voluntary Dismissal, Dec. 15, 2015, ECF No. 11).

1

FACTUAL BACKGROUND

BAT, a limited liability company organized under the laws of the State of New York, brings this suit in an effort to recover damages in connection with property alleged to have been stolen from the TD Bank safe deposit box during the August 2012 robbery of the Avenue U branch. (See generally 4th Am. Compl., Sept. 15, 2016, ECF No. 46). BAT alleges that it is the assignee of "all rights and claims" held by Chaya Bienenstock and Yaakov Bienenstock (the "Bienenstocks"). (Id. ¶ 2). It is alleged that the Bienenstocks entered into a contract with TD Bank on June 10, 2010, to lease a safe deposit box at the TD Bank Avenue U branch. (Id. ¶ 15). In exchange for an annual rental fee, TD Bank "agreed to safeguard and store the items that Plaintiff placed in its safe deposit box in the secured vault located" at the branch. (Id. ¶ 16). Plaintiff claims that at some time in June 2010, "valuables in excess of $250,000," of which plaintiff "is the owner and assignee of all ownership rights" were placed into the safe deposit box. (Id. ¶ 21).

On August 5 into 6, 2012, there was burglary at the Avenue U branch of TD Bank. COPS was the alarm monitoring company at the time. (COPS 7/13/18 Letter[2] at 1). During the burglary, the telephone wires at the bank were cut resulting in a code being sent to COPS reflecting that the TD Bank panel was not responding. (Id.) According to COPS, within 120 minutes after the code was received by COPS, TD Bank was notified and the proper procedure was followed. (Id.)

COPS claims that the other defendant, Integrated, had a Central Office Monitoring service contract that included rental of communication software. (Id.) According to COPS' letter

---

[2] Citations to "COPS 7/13/18 Letter" refer to the letter filed by Lydia Security Monitoring, Inc. d/b/a Cops Monitoring, dated July 13, 2018, ECF No. 133.

of July 13, 2018, the agreement did not include installation or maintenance of telephone lines, equipment or hardware and the Integrated contract specifically excludes responsibility for "any failure which prevents transmission signals from reaching the central office monitoring system or damages arising therefrom." (Id.) The Integrated contract further provided that "there are no third party beneficiaries of this contract." (Id. at 2). According to COPS, it was a subcontractor to Integrated and a wholesale provider of signal monitoring services; it had no contract with TD Bank and the statute of limitations bars the plaintiff's negligence claim. (Id.)

## DISCUSSION

### A. BAT's Motion to Compel Production of Documents

By letter dated February 26, 2018, BAT moves to compel the production of certain documents which plaintiff claims TD Bank has failed to disclose. (See generally BAT's Letter Mot. to Compel, Feb. 26, 2018, ECF No. 122 ("BAT's 2/26/18 Letter")). These include: 1) all communications between TD Bank, Integrated, and COPS; 2) all documentation between the parties requesting monitoring services at the Avenue U branch; 3) all documents concerning Integrated's and COPS' monitoring services at "all TD Bank locations;" 4) all monitoring "Templates" "for all TD Bank branches;" 5) all documents "concerning all services provided and/or offered by Integrated and COPS to TD;" 6) emails from TD Bank's chief of security; 7) statements and documents TD Bank provided to the authorities relating to the robbery at the Avenue U branch; 8) all documents concerning the design and construction of the security system at the Avenue U branch; 9) all documents that TD Bank is required to maintain pursuant to 12 C.F.R. § 21.1-4, including the "reports and minutes of the board of directors, as required by 12 C.F.R. § 21.4; 10) detailed information about the security system, construction and locks at the Avenue U branch; and 11) information concerning the security and alarm of the basement at

the Avenue U branch. (BAT's 2/26/18 Letter at 2-4). In addition, BAT's letter motion states: "The listing above and the following are only the general identify [sic] of documents being withheld by defendants, but primarily by TD Bank. It would unduly burden the Court to list each and every failure by defendants to provide documents." (Id. at 3).[3]

In response, TD Bank argues that plaintiff has failed to identify which document requests and interrogatories are at issue, and has not provided the relevant documents to the Court. (TD's Opp'n, Mar. 5, 2018, ECF No. 125 ("TD's 3/5/18 Letter")). While the bank agrees that documents relating to the alarm and security system at the Avenue U branch are relevant, it maintains that it has produced all "relevant schematics, alarm system information, alarm maintenance records, documents evidencing all instances in which the alarm lost communication, and manuals concerning the alarm and security." (Id. at 2). The bank also contends that is has provided all of the relevant contracts between the bank and its co-defendants relating to security. (Id.) As for the video and emails, the bank asserts that it has agreed to produce these items. (Id.) TD Bank asserts that it is has responded to all discovery served by plaintiff as of January 19, 2018 and that since that time, plaintiff served three Requests for Production of Documents and 157 Requests for Admission, the latter of which is addressed below.

Having reviewed the parties' submissions, the Court notes as an initial matter that plaintiff's failure to comply with the Court's requirement that motions to compel discovery be accompanied by copies of the relevant requests or interrogatories initially made it difficult for the Court to evaluate and rule on the instant disputes. See L. Civ. R. 37.1 (providing that parties

---

[3] As discussed below, what BAT describes as an "undu[e] burden" is actually what is required by the Local Rules, and it is the failure to enumerate the alleged deficiencies that made it difficult for the Court to rule on this dispute.

must quote verbatim each discovery request and response at issue in a motion); L. Civ. R. 37.3(c) (requiring parties to attach relevant materials to discovery motions).[4] After the Court directed BAT to comply with the Local Rule, BAT submitted some of the discovery requests and responses at issue on July 11, 2018, but failed to explain which requests corresponded to the categories of requests described in the letter motions. (See Electronic Order, July 5, 2018; BAT's 7/11/2018 Letter, ECF No. 130). The Court has reviewed the requests and responses themselves, but nonetheless issues its ruling with reference to the categories described in the parties' letters to promote efficiency in light of the number of requests at issue. This is a particularly appropriate way to proceed given that the parties appear to have viewed categories to be sufficient in the first instance and because a request-by-request ruling would not change the ultimate outcome.

Based on the plaintiff's description of its own requests, the Court finds as follows:

1. With respect to the first category of requests seeking all communications between TD Bank, Integrated, and COPS, the Court finds that the requests are overbroad and not limited by subject matter or time period. It is the duty of the party serving a request for production to draft a request that "describe[s] with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). Indeed, by signing a discovery request, counsel certifies various statements about the request, including that the request is "neither unreasonable nor unduly burdensome or expensive." Fed. R. Civ. P. 26(g)(1)(B)(iii); see also Fed. R. Civ. P. 26(g)(3) (providing that sanctions are mandatory if a certification violates the rule without substantial justification). In light of this duty, courts faced with overbroad requests need not

---

[4] It is a straightforward proposition that courts generally cannot opine on documents they have not been provided. Thus, even if there were no rule imposing an explicit requirement, the need to make the documents at issue available to the Court should be apparent to any attorney.

narrow the scope of the request—though there certainly is discretion to do so—but may instead sustain the overbreadth objection and deny the requested discovery.  As many courts have recognized, to narrow unreasonably overbroad discovery requests can "encourage litigants to demand the moon thinking they can always fall back to something reasonable," but "[t]hey should be reasonable from the start."  Boston Scientific Corp. v. Lee, No. 14 MC 80188, 2014 WL 3851157, at *7 n.59 (N.D. Cal. Aug. 4, 2014) (quoting Straight Path IP Group, Inc. v. Blackberry Ltd., No. 14 MC 80150, 2014 WL 3401723, at *1 (N.D. Cal. July 8, 2014)).  It was incumbent on BAT to draft reasonable discovery requests that complied with Rule 34 before serving the requests on the defendants or, at the very least, to narrow the scope of the requests at the required meet-and-confer prior to requesting judicial intervention.  Nonetheless, BAT did not draft or narrow its requests to make them reasonable and particular.  The Court declines to do what BAT did not, and thus denies the motion to compel as to these requests.  To the extent that TD Bank has agreed to produce emails in response to this request, the Court directs the parties to meet and confer as to the time period for the production and to limit the request to emails related to the Avenue U branch.

In its July 13, 2018 letter, COPS complains that in plaintiff's letter of February 2, 2018, plaintiff suggests that COPS had not responded to the discovery requests.  Plaintiff points to the single email produced by COPS and argues that COPS did not produce emails.  COPS asserts that it searched and there was only one email.  Given the representation that all e-mails have been produced and in the absence of any evidence to the contrary, the Court denies BAT's motion to compel additional e-mails from COPS.

2. With respect to the requests for "all documentation between the parties requesting monitoring services at the Avenue U branch," plaintiff does not identify with sufficient

specificity what documents it believes are missing. Plaintiff merely states that the defendants have not produced documents showing "when TD requested that Integrated and COPS provide monitoring services, when Integrated and COPS commenced and ceased providing monitoring services, or the specific guidelines of the monitoring services." (BAT's 2/26/18 Letter at 2). Since defendant represents that it has produced all agreements, contracts and communications between TD Bank and the other defendants, it is not clear exactly what plaintiff is still seeking. Indeed, in its letter, COPS asserts that the discovery demands were not phrased in the way that plaintiff suggests in its letter and that COPS provided the contracts as to when service was provided. (COPS 7/13/2018 Letter at 3). Accordingly, the parties are to confer and plaintiff is to be very specific as to what it does not have.

3.  With respect to the requests for documents relating to "all of TD's locations," the Court finds that the requests are overly broad and not limited in time, and that no relevance has been shown to warrant production. These requests exceed the permissible scope of discovery, see Fed. R. Civ. P. 26(b)(1), and, once again, also fail to "describe with reasonable particularity" the documents BAT seeks. See Fed. R. Civ. P. 34(b). The motion to compel is therefore denied as to these requests.

4.  With respect to the monitoring "Templates," once again the request is overly broad in that it relates to "all" TD branches. COPS indicates that it served plaintiff with the template in effect at the Avenue U branch as of July 2011; that the templates are kept in a data base; and there is no way for COPS to go into its software to detect audit trails. The Court agrees that the relevant template has been provided and that the request for the templates as to "all" TD Bank branches is overbroad and not proportional to the case. Moreover, BAT failed to confer meaningfully to attempt to narrow the scope and burden of the request. Indeed, COPS

offered to conduct another limited search for templates relating to the Avenue U branch if plaintiff would agree to a reasonable time period, but plaintiff instead chose to seek relief from the Court. Accordingly, the motion to compel production of the templates for all TD Bank branches across the country is denied.

5. Similarly, the fifth category of requests, seeking production of "all services provided and/or offered" to TD by the codefendants, is not limited in time, nor is there an explanation as to relevance of all potential services offered at other branches. These requests fail to comply with Rules 26 and 34. Although plaintiff can explore some of these issues during deposition, its motion to compel is denied as to these requests.

6. To the extent that the plaintiff believes that TD Bank has withheld documents concerning the design and construction of the security system, plaintiff only points to the failure of TD Bank to describe the locations of the devices in the responses to interrogatories. The bank has represented that it has produced "schematics." (TD Bank's 3/5/18 Letter at 2). If these "schematics" are related to something other than the schematics of the alarm system, then the parties are Ordered to confer to determine if there are any other documents that show the location of the alarm devices. If, however, the schematics are related to the alarm system, but BAT seeks more information regarding device locations, it appears that a deposition, rather than iterative development through document requests and interrogatories, would be a significantly more efficient way for BAT to obtain the information it seeks.

7. With respect to documents that the plaintiff argues that TD Bank is required to maintain pursuant to certain regulations, the only two examples cited by plaintiff are the "identity of the designated security officer" and the reports and minutes of the board of directors. (BAT's 2/26/18 Letter at 3). Rather than responding to these requests, defendant argues that

there is no private right of action under the cited regulations. (TD Bank's 3/5/18 Letter at 2). However, defendant never explains why it should not be required to produce the identity of the security officer; thus, the Court Orders that the security officer's identity be disclosed.

At the same time, however, plaintiff's request for all of TD Bank's Board of Directors reports and minutes, not limited to any time period and not limited to any topics even remotely related to this singular incident, is unjustifiably broad and not at all proportional to the needs of this case. Thus, the Court denies the request to compel production with respect to this category of requests, except as to the identity of TD Bank's security officer.

8. With respect to the last two categories of requests listed in plaintiff's letter, the description of the information sought is so vague as to make it impossible for the Court to pass upon the requests. Accordingly, the motion to compel is denied with respect to the last two categories of requests.

**B. TD Bank's Motion For A Protective Order**

1. Requests to Admit

TD Bank also filed a letter on February 26, 2018, seeking permission to file a motion for a protective order concerning Plaintiff's Second Request for Admissions and multiple non-party subpoenas. (TD's 2/26/18 Letter at 1).[5] The bank notes that it has responded to plaintiff's first demand for documents, plaintiff's first and second sets of interrogatories, and plaintiff's first request for admissions. (Id. at 1-2). The bank contends that plaintiff's Second Request for Admissions, dated February 9, 2018, violates the Rules of the Court in that the First Request

---

[5] As an initial matter, this Court does not require pre-motion conferences when addressing discovery-related motions. See, e.g., L. Civ. R. 37.3; Individual Practices of the Hon. Cheryl L. Pollak.

consisted of 69 requests and the Second Request consists of 157 requests for a total of 225 Requests to Admit. (Id. at 2). In addition, plaintiff has also served 79 document demands and 57 interrogatories in its Supplemental Interrogatories. (Id.)

In response to TD Bank's objection to the plaintiff's second set of Requests to Admit, plaintiff merely states that TD Bank's "objections are without merit in fact or law." (BAT's 3/5/18 Letter at 1, ECF No. 126). The plaintiff does not address the substance of the requests for admission and the bank's contention that the requests to admit fail to comply with the requirement that the party must set forth requests "'simply, directly, not vaguely or ambiguously.'" (TD Bank's 2/26/18 Letter at 2 (quoting Neogenix Oncology Inc. v. Gordon, No. 14 CV 4427, 2017 WL 4233028, 2017 U.S. Dist. LEXIS 155429, at *7-8 (E.D.N.Y. Sept. 22, 2017)).

Rule 36 of the Federal Rules of Civil Procedure provides that "[a] party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(1). "Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Advisory Committee Note to the 1970 amendment of Fed. R. Civ. P. 36. Many courts have opined that requests for admissions are not a discovery device, at least not in the way that interrogatories, requests for production, and depositions are, and cannot serve as a substitute for those discovery methods. See, e.g., Neogenix Oncology Inc. v. Gordon, 2017 WL 4233028, at *2 (collecting cases and quoting Henry v. Champlain Enters., Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003)); Pasternak v. Dow Kim,

No. 10 CV 5045, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) (explaining that requests for admissions "are not a discovery device at all, 'since [they] presuppose[] that the party proceeding under Rule 36 knows the facts or has the document and merely wishes the opponent to concede their genuineness'") (quoting 8B Charles A. Wright *et al.*, Federal Practice and Procedure § 2253); Dubin v. E.F. Hutton Grp. Inc., 125 F.R.D. 372, 375 (S.D.N.Y. 1989) (observing that Rule 36 provides "a procedure for obtaining admissions for the record of facts already known by the seeker") (citation and quotation marks omitted). The party requesting admissions bears the burden of setting forth its requests simply and directly, not vaguely or ambiguously. Neogenix Oncology Inc. v. Gordon, 2017 WL 4233028, at *2. Requests must be framed so that they can be answered with a simple admission or denial without explanation and, under some circumstances, to permit a qualification or explanation to clarify the nature of the admission or denial. Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003).

It is up to the party seeking discovery to draft a discovery request that complies with the applicable rules. It emphatically is not the job of the Court to correct a party's sloppy drafting or intentionally overreaching discovery requests. BAT's Second Request for Admissions contains 157 requests that are repetitive, confusing, of dubious utility and, most importantly, incredibly burdensome. Having reviewed each one, the Court finds that many are vaguely worded (see, e.g., No. 23 ("TD Bank never communicated with COPS"); No. 24 ("TD Bank never communicated with COPS in writing"); compare No. 26 ("Security System did not provide for any device to signal entry into the Basement") with No. 27 ("Security System did not have any device to signal entry into the panel where the Wires were located")), sought admissions as to the content and interpretation—rather than genuineness—of documents (see, e.g., Nos. 1-19, 106, 108, 110, 112, 114, 116, 118, 120, 122, 124, 126, 128, 130, 132, 134, 136, 138, 140, 142, 144,

11

146, 148), dealt with documents and issues dating five to ten years prior to the incident (see, e.g., Nos. 106, 108, 110, 112, 114, 116, 118, 120, 122, 124, 126, 128), and were unnecessarily duplicative. (See, e.g., Nos. 34, 35, 36, 37, 40, 41, 42).

Not only do many of the requests have little relevance to the claims and defenses in this action, but given that plaintiff has already served 69 requests to admit, the Court finds that the additional 157 requests are overly burdensome and not proportional to the needs of the case at this stage of the litigation. Rule 36 is not an end unto itself, but instead is designed to facilitate trial on the merits "by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact." Pasternak v. Dow Kim, 2011 WL 4552389, at *5 (citation and quotation marks omitted). The requests for admissions submitted by BAT have little relation to that goal, and certainly would not achieve their stated purpose under Rule 36 of narrowing the issues for trial. Indeed, it appears that rather than seeking admissions regarding facts already known to plaintiff, BAT's requests for admissions actually seek to discover information that is central to the dispute in this action and not already known BAT. Requests for admissions are particularly ill-suited to the task of uncovering new information and thus generally are best used "at the conclusion of discovery, because 'their sole purpose is to streamline the presentation of evidence at trial.'" Id. (quoting T. Rowe Price small-Cap Fund, Inc. v. Oppenheimer & Co., 174 F.R.d 38, 43 (S.D.N.Y. 1997). Depositions and interrogatories are better suited to BAT's apparent purpose, and would be more convenient and less burdensome. See Fed. R. Civ. P. 26(b)(2)(C)(i).

Accordingly, TD Bank's motion for a protective order is granted with respect to BAT's Second Request for Admissions.

2. Subpoenas

TD Bank challenges thirteen subpoenas BAT seeks to serve on non-parties, arguing that they are facially overbroad, seek irrelevant documents and are calculated to harass TD Bank. (TD Bank's 2/23/18 Letter at 3). One example is a subpoena seeking "all documents relating to Commerce Bank (now known as TD Bank)" from January 1, 2002 to date, relating to the design and construction of safes, walls, ceilings, vaults, etc. (Id.) Other subpoenas seek "all documents concerning all services" provided to TD Bank; there is no limitation on the scope of this subpoena to matters related to the incident at issue or any limit on time period. (Id.)

"A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." United States ex rel. Ortiz v. Mount Sinai Hosp., 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016) (quoting Nova Prods., Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 241 (S.D.N.Y. 2004)); see also Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) (explaining that "[i]n the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness"). "[T]he claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served." Samad Bros., Inc. v. Bokara Rug Co., 09 CV 5843, 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30, 2010). "[T]he party invoking a privilege bears the burden of establishing its applicability," and the "burden is a heavy one, because privileges are neither 'lightly created nor expansively construed.'" In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379, 384 (2d Cir. 2003) (quoting United States v. Nixon, 418 U.S. 583, 710 (1974)).

Although the subpoenas suffer from many of the same problems as the Requests to Admit and the Requests for Production, TD Bank has not asserted any privilege or right that would

13

support its standing to quash the proposed subpoenas directed to non-parties. The motion is therefore denied for that reason. Nonetheless, the non-parties subject to the subpoenas remain free to move to quash them if they deem it appropriate to do so, and BAT's attorneys remain obligated to "take reasonable steps to avoid imposing undue burden or expense on a person [or entity] subject to [a] subpoena." Fed. R. Civ. P. 45(d)(1). If BAT and its attorneys fail to satisfy this obligation, sanctions are mandatory. See id.

3. BAT's May Requests for Production

On July 12, 2018, TD Bank submitted a second letter motion for a protective order relating to plaintiff's May 4, 2018 Requests for the Production of Documents, which were attached to the motion. (See generally TD Bank's 7/12/18 Letter, ECF No. 131). These requests cover some of the issues addressed above—namely, the plaintiff's requests for documents relating to other branches, including security records, security instructions, communications relating to power outages at other branches and security system blueprints of all other TD Bank branches. As noted, the bank asserts that it has produced all relevant documentation relating to the Avenue U branch and that TD Bank has a legitimate reason to keep the security records of other branches not involved in this isolated incident confidential. In addition, the bank notes that it has "over one thousand locations and has been in business for over forty years," and yet the requests are not limited in either scope, time, or location.[6] (TD Bank's 7/12/18 Letter at 2). The cost of gathering these documents, even if they were remotely relevant, would far outweigh their value to the litigation and would be disproportionate to the needs of the case. The bank contends that this is "an apparent attempt to harass and annoy TD Bank" and that plaintiff should not be

---

[6] The Court observes that the Requests specifically provide that "the relevant time period shall be from 2003 to date and pertain to all of TD Bank branches or locations." (BAT's 5/24/18 RFP at 4, ECF No. 131-1).

14

permitted to engage in a "fishing expedition into all of TD Bank's security records, communication and other data relating to over a thousand banking locations . . . over the past 40 years." (Id. at 3).

On July 13, 2018, COPS submitted a letter in support of the motion of TD Bank for a protective order, disputing plaintiff's arguments and contending that the defense responses to plaintiff's demands were adequate, particularly given the "vague, confusing and overbroad" demands which required the defendants to speculate as to what was being requested. (COPS' 7/13/18 Letter at 2). As examples, COPS notes that Item 1 of plaintiff's requests asks for all documents between or among the defendants, and Item 6 asks for all documents relating to COPS services, with no further indication as to what plaintiff was looking for in either request. (Id.) Item 3 requested the ISS contract with TD Bank and Item 4 asked for all documents regarding services to TD Bank; the contract, which is responsive to both items, was already produced. Items 7-33 seek documents indicating if one of the parties was negligent or breached a duty under a contract and seeks to have COPS marshal the evidence under one of plaintiff's legal theories.

Similarly, to the extent that plaintiff sought information in its February 6, 2018 request, the May request was essentially a duplicate of an earlier request. COPS further explains that it does not maintain hard copies of its records and many of its records are stored on outdated hardware with software that is not in current use, and thus, the records are inaccessible.

In response to the letters from TD Bank and COPS, plaintiff submitted a letter dated July 16, 2018, in which plaintiff claims that TD Bank has uniform policies throughout its branches; there are not individual policies for each branch. (Pl.'s 7/16/18 at 2, ECF No. 134). Plaintiff claims that on July 29, 2011, Integrated provided instructions to COPS that modified earlier

15

instructions from TD Bank. (Id.) According to plaintiff, there are no documents that support this claim that have been produced. TD Bank and Integrated claim that COPS never notified them of the communication outage at the bank which occurred at the time of the burglary, and the bank claims that it did not discover the burglary until 8:00 a.m. the next morning. (Id.) Plaintiff disputes COPS' representation that it provided notice to the bank within 120 minutes. (Id.)

Plaintiff contends that the documents it seeks are designed to obtain information about the instructions and the outages and that documents related to all alleged outages at all branches are relevant to explore TD Bank's claim that it instituted the Alarm System Delay Programming due to prior outages. (Id. at 4). These are covered by Requests 1, 7, 8, 12, 13, 14, 15. (Id.) As for Requests 18, 19, 20, 21, 22, 23, and 24, plaintiff contends that these relate to the Cellular Backup system which TD Bank decided not to install which would have allowed the bank to log into the video feed during the burglary. (Id. at 4-5). However, since the Verizon Lines and the POTS Line were cut, there was no ability to log into the cameras. Therefore, plaintiff argues that all these requests are relevant and proper. (Id.) Finally, Requests 25 and 26 relating to the security system blueprints would show the location of the security devices designed to protect the Verizon and POTS Lines, as well as the locations where the burglars entered the building, the location of the video cameras, and "the existence and/or spoliation of any video recordings of the Burglary." (Id. at 5).

TD Bank, in its letter dated July 18, 2018, represents that a meet and confer was held among counsel and that TD Bank agreed to review and determine if there were any pre-incident security drawings, other power-outage documents, and documents relating to a change in

16

template. (TD Bank's 7/18/18 Letter at 1, ECF No. 137). The bank has determined that no such additional documents exist except a post-incident security system plan which is irrelevant.

As to the power outages, TD Bank represents that it has provided documents reflecting those, and has provided information concerning cellular back-ups. (Id.) According to the bank, all of these documents have been provided, but plaintiff "refuses to acknowledge that they have these documents." (Id. at 2). Moreover, since the bank did not have cellular back-up at the time of the incident, it is not clear what documents BAT might be seeking. (Id.) As for the video, TD Bank states that it has produced the only remaining video, and although this video was given to the New York City Police Department and to plaintiff, plaintiff continues to request additional videos despite TD Bank's repeated assertions that no further video exists. (See id.)

Finally, TD Bank notes that the robbery occurred in 2012; plaintiff did not bring the action until 4 years later. Thus, the bank claims that it is "truly amazing" that plaintiff is shocked that certain documents no longer exist, particularly in light of the fact that plaintiff has no documentation that the children of Helen Sieger lent their mother $10 million. According to TD Bank, this whole lawsuit is a "scam."

Having reviewed the parties' respective submissions, the Court finds that the defendants have responded reasonably to the requests and have produced the documents and information required under the Federal Rules of Civil Procedure. The Court also finds that COPS has shown that the information BAT seeks is not proportional to the needs of the case in light of the costs involved in accessing such information and, even if the requests were proportional, such information is not reasonably accessible because it is maintained offline as inactive data, access to which requires special technology and resources. See Fed. R. Civ. P. 26(b)(2)(C) (providing that if a party from whom ESI is sought shows "that the information is not reasonably accessible

because of undue burden or cost," a court may order discovery from such sources only if the opposing party shows good cause to require such production); see also The Sedona Priniples, Third Edition:  Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 1, Cmt. 8.b, 138-40 (2018).

To the extent that plaintiff has identified specific requests that it believes have not been answered, the failure to provide the Court with those requests, despite being ordered to do so, prevents the Court from ordering production.  Thus, the motion for a protective order is granted.

**C.  Depositions of Gerald Bianchi and John Minster**

By letter dated July 9, 2018, BAT seeks an Order requiring Gerald Bianchi and John Minster to appear for their depositions on July 24 and 25, 2018.  (See generally BAT's 7/9/18 Letter, ECF No. 129).  Mr. Bianchi is a former TD Bank employee who was Vice President of Physical Security at the bank at the time of the burglary.  His deposition was postponed due to his wife's illness.  TD Bank indicates in their responsive letter dated July 12, 2018, that Mr. Bianchi is available for his deposition in Cherry Hill, New Jersey or Philadelphia on August 7, 8 or 10.  (TD Bank's Response at 1, July 12, 2018, ECF No. 132).  Given that he is a non-party witness, counsel for BAT is directed to notify TD Bank's counsel by August 3 which of these days is best.

The BAT July 9, 2018 letter also notes that TD Bank has refused to schedule the deposition of the bank's current Vice President for Security, John Minster.  In response, counsel for the bank indicates that the witness is available on July 25.  The Court expects that the parties will have been reasonable and proceeded with the deposition on that date.  If they did not, they shall meet and confer to schedule Mr. Minster's deposition for the month of August.

CONCLUSION

For the reasons set forth above, BAT's motion to compel is denied with the few exceptions noted by the Court. TD Bank's motion for a protective order with respect to BAT's Second Requests for Admissions and May 4, 2018 Requests for Production is granted, as is Lydia Security Monitoring, Inc.'s motion for protective order regarding BAT's January 2018 and February 2018 requests for production. TD Bank lacks standing to move to quash BAT's subpoenas directed to third parties and its motion is therefore denied in that respect. Based on the apparent agreement of the parties, the Court finds BAT's motion to compel depositions to be moot, but directs the parties to confer on dates as set forth herein.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
July 30, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York